**L.S. and Julia V., Individually and as Parent of L.S., Plaintiffs,**

v.

**LANSING SCHOOL DISTRICT #158; Cecilia Heiberger, in her official capacity as Superintendent; Illinois State Board of Education, Defendants.**

**Case 14 CV 10052**

United States District Court, N.D. Illinois, Eastern Division.

Signed January 23, 2015

Olga Frances Pribyl, Lee Kathryn Robbins, Margaret McAuslan Wakelin, Equip For Equality, Chicago, IL, for Plaintiffs.

Courtney N. Stillman, Hauser Izzo, LLC, Flossmoor, IL, Joshua Paul Herzog, Hauser Izzo, LLC, Oak Brook, IL, Michael T. Dierkes, Chicago, IL, for Defendants.

## TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Elaine E. Bucklo, United States District Judge

In this action, plaintiffs—a twelve-year-old boy and his mother—appeal the administrative ruling rendered by an Impartial Hearing Officer ("IHO") on August 18, 2014, following a special education due process hearing pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1410 *et seq.* Before me is plaintiffs' request for a temporary restraining order and preliminary injunction ordering defendants to allow L.S. to return to Memorial Junior High School, where he was a sixth-grade student during the 2013–2014 school year, and to receive educational services in accordance with the "stay-put" instructional placement agreed upon during that school year. For the reasons that follow, I grant the motion.

### I.

Plaintiffs assert that L.S. suffers from type-1 diabetes, a mood disorder, attention deficit hyperactive disorder, and learning disabilities, qualifying him as a "child with a disability" pursuant to the IDEA. L.S. has attended various District schools since preschool and has received specialized instruction and related services through an Individualized Education Program ("IEP") at each school. In October of 2013, L.S.'s IEP team determined that L.S. should be placed in an alternative therapeutic day school called PACE, which serves a number of school districts including District 158. L.S.'s mother, Julia V., disagreed with the placement change and invoked her statutory right to a due process hearing.

The IDEA provides that parents have the right to participate in the development of their children's IEP, including the right to challenge a proposed IEP in administrative and judicial proceedings. *See* 20 U.S.C. § 1415; *School Committee of Town of Burlington, Mass. v. Department of Education of the Commonwealth of Massachusetts,* 471 U.S. 359, 361, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). When disagreements arise, the statute guarantees that students and their parents "be able to rely on an uninterrupted education during a contest between the school board and the parents." *Board of Educ. of Community High School Dist. No. 218, Cook County, Ill. v. Illinois State Bd. of Educ.,* 103 F.3d 545, 548 (7th Cir.1996). To this end, it provides,

> during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the

child shall remain in the then-current educational placement of the child.

20 U.S.C. § 1415(j). This provision is commonly known as the "stay-put" provision.

In this case, the stay-put provision was implemented during the 2013–2014 school year, and L.S. remained at Memorial throughout the parties' attempts at resolution, and, when these failed, the due process proceedings.

Due process hearings were held for four days in June and July of 2014, and on August 18, 2014, the IHO issued a decision in favor of the District. The following day, a District administrator contacted Julia V. to arrange bus transportation for L.S. to attend PACE. Julia V. notified the District that she was reviewing the IHO's decision, and that L.S. would not be attending PACE the following day. She states in her affidavit that although she had registered L.S. at Memorial before she received the IHO's decision, she "understood that the hearing officer's decision meant that L.S. needed to attend PACE, unless [she] appealed the decision." Aff. of Julia V., Exh. A to Pl.'s Reply at ¶¶ 11, 15.

Pursuant to the Illinois School Code, plaintiffs had 120 days to file an appeal:

Any party to an impartial due process hearing aggrieved by the final written decision of the impartial due process hearing officer shall have the right to commence a civil action with respect to the issues presented in the impartial due process hearing. That civil action shall be brought in any court of competent jurisdiction within 120 days after a copy of the decision of the impartial due process hearing officer is mailed to the party as provided in subsection (h). The civil action authorized by this subsection shall not be exclusive of any rights or causes of action otherwise available. The commencement of a civil action un-der this subsection shall operate as a supersedeas.

105 ILCS 5/14–8.02a(i). There is no dispute that this appeal, filed on December 15, 2014, was filed within the statutory time frame.

In the meantime, however, Julia V. was apparently unable to enroll L.S. at Memorial for the 2014–2015 school year. On September 18, 2014, Julia V. sent a letter informing the District that L.S. would not attend PACE. In response, the District reiterated its position that PACE was an appropriate placement for L.S., and that if Julia V. "change[d her] mind" about PACE, it would "work with [her] to facilitate L.S.'s smooth transition back to school." Pl.'s Reply, Exh. E. Although the record does not reflect that Julia V. told the District expressly that she wished for L.S. to return to Memorial, she understood from these and other communications that that was not an option, and, indeed, the District does not contend that it was. Accordingly, L.S. has not attended any school since the end of the 2013–2014 school year.

The parties had no further communication until plaintiffs initiated their appeal in this court. Two days later, on December 17, 2015, plaintiffs reached out to the District to "discuss the logistics of [L.S.'s] return" to Memorial as his "stay-put placement while the appeal is underway." Pl.'s Mot., Exh. D. The District responded that it did not consider Memorial to be L.S.'s stay-put placement because Julia V. "unilaterally withdrew L.S. from the District at the beginning of the school year." Pl.'s Mot., Exh. F. In response to the District's inquiry about L.S.'s current studies, plaintiffs explained that L.S. has been receiving instruction at home in the areas of math, English, science, and social studies, and has also been receiving socio-emotional behavioral therapy.

## II.

The parties' dispute boils down to a single issue: whether Memorial continues to be L.S.'s stay-put placement. The District's first argument is that the purpose of the stay-put provision is to minimize disruption to the student and to preserve his or her educational status quo, and that this purpose would be frustrated by returning him to Memorial, which he has not attended for eight months, and where he would have new teachers, different classrooms, and a different curriculum from the one he has been following at home. It then argues that Julia V.'s "unilateral withdrawal" of L.S. from Memorial disrupted his education and terminated his stay-put placement at Memorial. Neither argument survives scrutiny.

The District does not dispute that these proceedings have been pending since Julia V. invoked her right to a due process hearing in October of 2013, and that Memorial was L.S.'s "then current educational placement." The District argues that Julia V. effected a change to L.S.'s educational placement when she "withdrew" him from Memorial to "homeschool" him, but this argument is both legally flawed and factually incorrect. Not every change to a student's learning environment effects a change to his or her "educational placement." As the Seventh Circuit has noted, "the meaning of 'educational placement' falls somewhere between the physical school attended by a child and the abstract goals of a child's IEP," and courts use a fact-driven approach to determine whether a change to the student's placement has occurred. *Board of Educ. of Community High School Dist. No. 218, Cook County, Ill. v. Illinois State Bd. of Educ.,* 103 F.3d 545, 548–49 (7th Cir.1996). The facts here reveal that no change in L.S.'s educational placement has taken place.

First, the District strains to liken L.S.'s current situation to one in which a parent withdraws a disabled student from public school to enroll him or her in a private school, citing a criminal case more than a half-century old, *People v. Levisen,* 404 Ill. 574, 90 N.E.2d 213 (1950), in which the Supreme Court of Illinois held that Seventh Day Adventists who educated their seven-year-old at home, and who incorporated a curriculum comparable to the one used at the child's grade level in public schools, had not violated the Compulsory School Attendance Law. The court found that "the child is being taught third-grade subjects, has regular hours for study and recitation, and shows a proficiency comparable with average third-grade students," then held that her education fell within the statute's exemption for children attending "private school," noting that the law "is not made to punish those who provide their children with instruction equal or superior to that obtainable in the public schools." *Id.* at 215.

*Levisen* is plainly inapposite. Setting aside that the case predated the enactment of the IDEA by forty years, and had nothing at all to do with the unique educational needs of disabled students, L.S.'s situation cannot meaningfully be compared to the homeschool environment of the child in *Levisen.* Where the mother providing instruction in *Levisen* had "some training in pedagogy," and whose religious beliefs underlay her decision to educate her child in a home environment, *id.* at 214, Julia V. affirms that she is not a teacher or a special education teacher; has not taken education classes or worked in a school setting; does not believe she is qualified to be her son's primary instructor; and does not believe that her home is an appropriate environment for L.S.'s education. Aff. of Julia V., Exh. A to Pl.'s Reply at ¶¶ 31–33. In the end, *Levisen* serves only to emphasize the hollowness of the District's suggestion that Julia V.'s "homeschooling" of L.S. amounts to a new "educational

placement." In fact, it is no placement at all.

Moreover, it is far from clear that Julia V. "unilaterally withdrew" L.S. from Memorial. To the contrary, the only facts in the record indicate that Julia V. registered L.S. at Memorial and desired to enroll him there at the start of the 2014–2015 school year but believed–correctly, it appears–that Memorial was unwilling to accept him. While the District is correct that an important purpose of the stay-put provision is to maximize continuity in a student's education, it is not the statute's only purpose, and it must be put into perspective, in view of the available alternatives. In this case, there were two: Julia V. could send L.S. to PACE, despite her belief that it was not an appropriate or a safe placement for him,[1] or she could forego any placement at all, and do the best she could to keep his education minimally afloat while she considered how to proceed.

Setting aside that the first option–sending L.S. to a school he has never attended, and that, as a therapeutic day school, differs dramatically from the traditional public schools he had always attended–would have offered him even less continuity than returning him to Memorial, compelling Julia V. to accept the District's placement before her appeals are exhausted is at odds with another important purpose of the IDEA, which is to "prevent school officials from removing a child from the regular public school classroom over the parents' objection pending completion of the review proceedings." *Town of Burlington*, 471 U.S. at 373, 105 S.Ct. 1996.

Although, as Julia V. acknowledges, the second option–foregoing any formal instruction for L.S.–was far from ideal, she simply had no alternative that did not entail a relinquishment of her rights under the IDEA. Under these circumstances, and where Julia V.'s preferred option of returning L.S. to his previously agreed-upon stay-put placement was not available at the start of the school year, her choice to decline the placement at PACE cannot, consistently with the IDEA, be construed as effecting a "unilateral" change in L.S.'s placement such as would result in the forfeiture of her stay-put rights. While the District cites several cases in which parents who withdrew their children from public schools were unable thereafter to invoke the stay-put provision, none involves the constellation of circumstances at issue here. Above all, none entails a situation in which the student's removal from public school left him without any formal instruction at all.

A final problem emerges from the District's argument. There appears to be no dispute that if Julia V. had initiated her appeal immediately after the IHO's decision, or at least by the start of Memorial's 2014–2015 school year, L.S. would have been entitled to return to Memorial as his stay-put placement.[2] Julia V. explains in her affidavit why she was unable to appeal the decision immediately, but regardless of her reasons, the District's position that she terminated L.S.'s educational placement by disrupting the status quo begs the question: how long could she have waited? What if she had appealed on the first day

---

1. I pause here briefly to emphasize that the merits of the IHO's determination that PACE is an appropriate placement for L.S. are not before me, and nothing in this decision should be construed as expressing any view on that issue.

2. Julia V. explains in her affidavit that she did not appeal the decision immediately because she lacked the resources to hire an attorney, and because the not-for-profit organization that represented her in the administrative proceedings, and that is representing her in these proceedings, needed time to determine whether it would take her appeal.

of school? Would the District have allowed L.S. to return to Memorial on the second day? What about the 3rd week? How is a parent who files an appeal within the time period prescribed by state statute (so that the proceedings may be considered "pending" as required by the IDEA, as the District does not dispute is the case here) to know whether the appeal came soon enough to invoke the stay-put provision? Plainly the federal right to a stay-put placement cannot depend on fluid or arbitrary deadlines imposed by local school districts. *See Beth B. v. Van Clay*, 126 F.Supp.2d 532, 534 (N.D.Ill.2000) (parents did not forfeit federal stay-put rights by failing to move to stay IHO's decision within thirty day period established by state statute).

### III.

For the foregoing reasons, plaintiffs' motion for a temporary restraining order and preliminary injunction is granted. Defendants are ordered to allow L.S. to return to Memorial Junior High School, where he was a sixth-grade student during the 2013–2014 school year, and to receive educational services in accordance with the "stay-put" instructional placement agreed upon during that school year.